In the
United States Court of Appeals
For the Seventh Circuit

No. 99-2565

JAMES H. HOLBROOK,

Plaintiff-Appellant,

v.

LOBDELL-EMERY MANUFACTURING
COMPANY,

Defendant-Appellee.

Appeal from the United States District Court
for the Southern District of Indiana, New Albany Division.
No. 98 C 16--S. Hugh Dillin, Judge.

Argued April 4, 2000--Decided July 6, 2000

   Before COFFEY, ROVNER, and DIANE P. WOOD, Circuit
Judges.

   ROVNER, Circuit Judge.  James H. Holbrook sued
his employer, Lobdell-Emery Manufacturing
Company, for intentional infliction of emotional
distress ("IIED"), violations of his civil rights
under the United States and Indiana
Constitutions, and disability discrimination. The
district court granted summary judgment in favor
of Lobdell-Emery on the IIED claim and dismissed
Holbrook's other claims because he abandoned
them. Holbrook appeals only the summary judgment
ruling on the IIED claim. Because Holbrook cannot
show that his employer intended to harm him, a
requirement under Indiana law, we affirm.

I.

   The district court granted summary judgment in
favor of Lobdell-Emery and therefore we must
construe the facts as favorably to Holbrook as
the record will permit. See Rager v. Dade
Behring, Inc., 210 F.3d 776, 777 (7th Cir. 2000).
Holbrook began working for Lobdell-Emery in 1990
at its Indiana plant. In 1993, he was
hospitalized for depression and psychosis. When
he returned to work, his co-workers and
supervisors began to harass him about his
hospitalization. Three supervisors criticized the
quality and speed of his work, and one made a

sexual remark to him about a female co-worker. A superintendent called Holbrook "homo," "mother fucker," "fag," and "queer." On a number of occasions, co-workers told Holbrook he was "crazy" and "not right in the head." They referred to his hospitalization as time he spent in the "nut house" and the "mental ward." Holbrook's co-workers also harassed him by hiding his tools, spot gluing his toolbox, and setting fire to a rag in Holbrook's back pocket. The company itself refused to allow Holbrook to work overtime on one occasion, and also denied his bid to move to a new job position. After Holbrook was involved in a fist fight with another employee, Lobdell-Emery terminated him. Holbrook filed a grievance with his union, but the union declined to pursue it, finding that the discharge was appropriate.

Holbrook sued Lobdell-Emery for violations of his civil rights in terminating his employment, for discrimination against him based on his emotional and mental illness, and for intentional infliction of emotional distress. Lobdell-Emery moved for summary judgment. Holbrook did not address his civil rights claim or his disability discrimination claim in responding to the motion, and the district court dismissed those claims as abandoned. The district court found that the remaining IIED claim was not preempted by the Indiana Workers' Compensation Act because Holbrook sought recovery only for emotional and not physical injuries, and because his injuries did not arise from an accident. The district court granted summary judgment in favor of Lobdell-Emery, however, because Holbrook could not show that the employer itself committed the tort and that the employer intended the injury or actually knew the injury would occur, showings required by Indiana law. Alternatively, the district court granted summary judgment because the acts alleged by Holbrook were not extreme or outrageous enough to come within the purview of the IIED tort. Although the district court agreed these acts were "unthoughtful and boorish," as well as "unkind, cruel and disheartening," it found these were not the sort of acts the tort was created to remedy. Holbrook appeals.
II.

On appeal, Holbrook challenges only the district court's finding that the acts alleged were not so outrageous in character that they meet the standard for IIED. He contends that because these supervisors and co-workers knew Holbrook was mentally ill, and indeed tormented him because he was mentally ill, he has raised a question of material fact for the jury as to whether the acts alleged go beyond all possible bounds of decency, as required by Indiana case law. According to

Holbrook, only a jury may decide whether the acts alleged meet the standard of extreme and outrageous conduct. Holbrook does not address at all the district court's primary holding that he has no evidence supporting a finding that Lobdell-Emery itself or its alter ego committed these acts and intended the harm that came to Holbrook.

The Indiana supreme court first recognized the tort of intentional infliction of emotional distress in 1991, adopting the Restatement (Second) of Torts view: "The definition of the tort of intentional infliction of emotional distress is that 'one who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such distress.'" Cullison v. Medley, 570 N.E.2d 27, 31 (Ind. 1991) (quoting Restatement (Second) of Torts, sec. 46). In 1994, the court took up the issue of whether the Workers' Compensation Act ("WCA") preempted intentional tort claims against employers by employees. Because the WCA covered injuries that occurred "by accident," the court held that intentional torts, those that occurred when neither the injured party nor the employer intended the result, are not within the WCA's coverage, and thus are not preempted by the WCA. Baker v. Westinghouse Electric Corp., 637 N.E.2d 1271, 1274 (Ind. 1994).

In order to prove that the employer intended the harm, the court held that a showing of mere negligence was insufficient, even if the negligence could be characterized as reckless or wanton. Baker, 637 N.E.2d at 1275. Rather, the employee is required to prove that the employer deliberately intended to inflict an injury or had actual knowledge that an injury is certain to occur. Id. The court also emphasized that it is the employer itself that must have intended the injury, rejecting a respondeat superior analysis. Thus, an intentional tort committed by a supervisor, manager or foreman could subject that individual to tort liability but would not necessarily expose the employer to liability. Baker, 637 N.E.2d at 1275. In order to impute tortious intent to an employer that is a legal entity or artificial person, the employee must show either that "(1) the corporation is the tortfeasor's alter ego, or (2) the corporation has substituted its will for that of the individual who committed the tortious acts." Perry v. Stitzer Buick GMC, Inc., 637 N.E.2d 1282, 1287 (Ind. 1994). The court held that to prevail under the alter ego theory, the employee must show that both ownership and control of the corporation are in the tortfeasor's hands. Id. To succeed under the other theory, the employee must

show that the individual who committed the tort was acting pursuant to a policy or decision made through the corporation's regular decision-making channels by those with authority to do so. Id. The employee's injury must be shown to be the intended product of the policy or decision at issue if the plaintiff is to prevail. Id. See also Foshee v. Shoney's Inc., 637 N.E.2d 1277, 1281 (Ind. 1994) (before an injury can be said to have been intended by the employer and thus not by accident, the employee must show that the tort was committed by the employer or the employer's alter ego, and the employer must have intended the injury or actually known that the injury was certain to occur).

Holbrook cannot meet these stringent standards. He does not argue that the supervisors and co-workers who harassed him owned or controlled the corporation. He does not assert that the persons who injured him were acting pursuant to a decision or policy made through Lobdell-Emery's regular decision-making channels by persons authorized to do so. He merely contends that Lobdell-Emery knew of the situation and did nothing to stop it. The case law we have cited reveals a much higher standard for liability than mere negligence, however, and Holbrook's claim against his employer therefore fails under Indiana law. Holbrook attributes only a few actions to the corporation itself, namely refusing to allow him to work overtime on one occasion and denying his bid to move to a new position on another occasion. Even if these acts were committed by the employer with the intent to cause Holbrook emotional injury, these acts do not meet the standard for extreme and outrageous conduct set forth by comments to sec. 46 of the Restatement. Those comments, cited favorably by the Indiana Court of Appeals, define extreme and outrageous conduct as that which is so extreme in degree and outrageous in character as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community. See Gable v. Curtis, 673 N.E.2d 805, 809-10 (Ind. Ct. App. 1996) (citing the Restatement (Second) of Torts sec. 46, comment d). It is not enough that the defendant acted with intent that is tortious, or malicious, or even criminal. "Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!'" Id. The refusal of overtime and the denial of a position change clearly do not meet the standard.

We render no opinion, however, on whether the other acts committed by Holbrook's co-workers and supervisors meet the standard for extreme and

outrageous conduct. Had Holbrook sued the individuals who actually committed these acts, rather than his employer, the result may have been different. It is not difficult to imagine that a jury would exclaim "Outrageous!" upon hearing that Holbrook's co-workers taunted him and set him on fire knowing that he had recently been released from a hospital where he was being treated for severe depression and psychosis. We join the district court's assessment that verbally and physically assaulting a mentally disabled man is cruel and inexcusable. Because he sued his employer rather than his co-workers, however, the district court was correct to grant summary judgment in favor of Lobdell-Emery under Indiana law.

AFFIRMED.